IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MELISSA BELL o/b/o D.B., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-cv-509-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff, Melissa Bell on behalf of her minor son, D.B., applied for supplemental

security income ("SSI") under Title XVI of the Social Security Act.  The application was

denied at the initial administrative level.  Plaintiff then requested and received a hearing

before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a

decision in which he found D.B. not disabled since the date the application was filed.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  The

ALJ's decision consequently became the final decision of the Commissioner of Social

Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28

U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to

Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9).  Based on the court's

review of the record and the briefs of the parties, the court REVERSES the decision of

the Commissioner.

## II.     STANDARD OF REVIEW

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996

includes the standard for defining child disability under the Social Security Act.  *See*

PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996).   The statute provides that an

individual under 18 shall be considered disabled "if that individual has a medically

determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

1382c(a)(3)(C)(I) (1999).

The sequential analysis for determining whether a child claimant is disabled is as

follows:

> 1. If the claimant is engaged in substantial gainful activity, he is not disabled.

> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment.   If the claimant's impairment is not severe, he is not disabled.

3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health and physical well-being.  If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled.  A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities.  An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities.

*Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 752 (11th Cir. 2011)

(internal citations omitted).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled.  *See* 20 C.F.R. § 416.924(d)(2) (1997).  In reviewing the Commissioner's decision, the court asks only whether the ALJ's findings concerning the steps are supported by substantial evidence.  "Under this limited standard of review, [the court] may not make fact-findings, re-weigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

"Where substantial evidence supporting the ALJ's fact findings exists, [the court] cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings." *Id.* (citing *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991)).

## III.    ADMINISTRATIVE PROCEEDINGS

D.B. was fourteen years old at the time of the hearing.  *See* Tr. 21.  Following the administrative hearing, the ALJ found that D.B. had not engaged in substantial gainful activity at any time since the application date (Step 1).  *Id.*  The ALJ also found that D.B. had the following severe impairments under Step 2:  "history of elevated lead level, obesity, history of headaches, attention deficit hyperactivity disorder (ADHD), disruptive behavior disorder, obsessive-compulsive disorder (OCD), and borderline intellectual functioning (BIF)."  *Id.*  Nonetheless, the ALJ concluded that these impairments do not meet or equal in severity the criteria for any impairment in the Listing of Impairments, and that the claimant did not have an "extreme" limitation in any areas of functioning or "marked" limitation in two areas of functioning (Step 3).  Tr. 21-30.  Consequently, the ALJ found the claimant was not disabled.  Tr. 30.

## IV.    PLAINTIFF'S CLAIMS

Plaintiff presents three issues for this court's consideration in review of the ALJ's decision:  (1) whether "[t]he ALJ committed reversible error by failing to find that D.B. meets Listing 112.05C and/or 112.05D"; (2) whether "[t]he ALJ committed reversible error by failing to find a 'marked' limitation in the domain of Acquiring and Using

4

Information"; and (3) whether "[t]he ALJ committed reversible error by failing to find a 'marked' limitation in the domain of Attending and Completing Tasks."  Pl.'s Br. (Doc. 15) at 6-15.  Because the court determines the first issue requires remand for further proceedings, the court declines to address issues two and three at this time.

## V.   DISCUSSION

The structure of the listing for mental retardation, 20 C.F.R., pt. 404, subpt. P, app. 1, § 112.05, [2] is different from that of other mental disorders listings.  The listing contains an introductory paragraph which states that an intellectual disability is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  20 C.F.R., pt. 404, subpt. P, app. 1, § 112.05.  Further, the introductory paragraph states that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied."  *Id*.  Thus, if a plaintiff's impairment satisfies the diagnostic description in the introductory paragraph (i.e. significantly subaverage general intellectual functioning and deficits in adaptive functioning), an ALJ may consider any one of the six paragraphs to determine if the impairment meets the listing for mental retardation.

The ALJ's determination here is insufficiently clear to allow the court to conduct its mandated review for substantial evidence.  *See, e.g.*, *Gaskin v. Commissioner of Soc.*

---

[2] The ALJ repeatedly referred to 12.05 as the listing governing mental retardation.  However, 12.05 applies only to adults.  Adolescent mental retardation is governed by 20 C.F.R., pt. 404, subpt. P, app. 1, § 112.05.  The ALJ appears to be relying on 112.05, but cites to 12.05.

*Sec.*, 2013 WL 4081321, \*2 (11th Cir. Aug, 14, 2013) (remanding because the court was "unable to review correctly whether substantial evidence supports the ALJ's finding"). On the one hand, the ALJ appears to make a finding that D.B. met the requirements of the introductory paragraph, when she went on to discuss whether D.B. satisfied the requirements of paragraphs C and D.   On the other hand, after seemingly making a determination that D.B. met the requirements of paragraph D, the ALJ stated that D.B. "does not have the required deficits in adaptive functioning."   Tr. 22.   The ALJ does not explain what she means by the "required deficits." Indeed, on at least four occasions in the three paragraphs devoted to the listing 112.05 determination, the ALJ references "required" deficits in adaptive functioning, but fails to actually discuss any specific findings related to adaptive functioning.

This is troubling because the ALJ appears to have found that, outside of the "required" deficits in adaptive functioning, D.B. met the listing of paragraph D of 112.05, stating that "claimant has multiple impairments and received a full scale IQ score of 70." Tr. 22.   The ALJ's decision to move past the introductory paragraph suggests that she found D.B. met the requirement of deficits in adaptive functioning, something the court would note appears supported by substantial evidence.   But the ALJ's later determination regarding adaptive functioning is in conflict with such a suggestion.   The record is unclear due to the ALJ's failure to discuss the introductory paragraph's requirement of deficits in adaptive functioning.

That there is confusion on this issue is evidenced by the Commissioner's arguments in support of the ALJ.  The Commissioner attempts to support the ALJ's statement that D.B. lacked the "required" deficits in adaptive functioning by introducing the standards for a diagnosis of mental retardation under the DSM-IV, referring to the requirement of "significant deficits or impairments in adaptive functioning."  Def.'s Br. Doc. 18) at 9 (citing to *DSM IV* at 42).  However, there is no such requirement of "significant deficits" in the introductory paragraph of listing 112.05.  Instead, there is only a requirement of deficits.   That is, because the tests for a diagnosis of mental retardation under the DSM-IV and the determination of "Intellectual Disability" in listing 112.05 are distinct. The Commissioner's arguments related to adaptive functioning are without merit, because the Commissioner attempts to apply a higher standard of "significant deficits," rather than the listing requirement of deficits.[3]   The Commissioner's confusion on the matter is understandable, however, due to the ALJ's inconsistent and unclear findings.

Accordingly, this court finds that remand is necessary for the ALJ to clarify the listing 112.05 determination.

---

[3] The Commissioner's confusion on the issue is further evidenced by this statement:  "Thus, Dr. Jordan's opinion supports the ALJ's finding that D.B. did not have significant sub-average general intellectual deficits in adaptive functioning."  Def.'s Br. (Doc. 18) at 9.  Again, the Commissioner incorrectly attempts to apply a "significant standard" to adaptive functioning by blending the prongs of intellectual deficits and adaptive functioning together.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this case REMANDED for further proceedings consistent with this opinion.

Done this 20th day of November, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE